This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, the State of Ohio, appeals the suppression of evidence ordered by the Medina County Court of Common Pleas. We affirm.
On March 1, 1998, Patrolman James Martie of the Montville Police Department was dispatched to the BP gasoline station near the Route 18 and Interstate 71 interchange. Ptl. Martie's dispatch was pursuant to a report by an employee of the BP station that a patron had been in the station's bathroom for approximately forty-five minutes and was suspected of using an illicit substance while in the bathroom.
Upon Ptl. Martie's arrival at the BP station, a clerk at the station directed him to the restroom. The clerk also informed Ptl. Martie that the patron had entered the station holding her arm, then returned to her car from which she retrieved her purse, and had finally returned to the BP station where she entered the woman's restroom. She had remained inside for approximately forty-five minutes. The clerk also informed Ptl. Martie that a girl, approximately eight to ten years old, remained in Bing's parked car. The clerk was concerned about the girl's wellbeing, as the temperature was approximately twenty degrees that morning and the automobile had not been left running.
Ptl. Martie then proceeded to the restroom, which was at the end of a hallway. Upon reaching the restroom, Ptl. Martie knocked at the women's restroom door. Appellee, Jacalyn Bing, answered the knock. Ptl. Martie then inquired as to whether she was in need of assistance. Bing replied that she was not and then exited the restroom. At that point, Ptl. Martie recognized her as someone he had arrested approximately one year earlier on a warrant for a drug violation involving an opiate. He also observed that Bing's eyes were bloodshot and glassy, that she was shaky, and that she appeared to be dry mouthed by her speech.
Ptl. Martie made further inquiries as to whether Bing was all right. She assured him that she was all right, but had burned her hand and arm by spilling hot chocolate. Ptl. Martie then requested that Bing show him her injuries. Bing complied by pushing her sleeve up. Ptl. Martie noticed no burn marks but, rather, noticed what he believed to be a fresh needle mark. Bing stated that she had recently had blood drawn.
At that point, Ptl. Martie asked Bing to accompany him to her car to check on the girl in the car (Bing's daughter). As they walked to the car, Ptl. Martie requested backup by radio. He asked if Bing was using drugs and she replied that she was not. After Deputy Brooks of the Medina County Sheriff's Office, the requested backup, arrived, Ptl. Martie requested permission to search Bing's purse. She initially consented, but then withdrew her consent, stating that Ptl. Matrie would not like what he would find.
Deputy Brooks then searched Bing's purse. It contained a "drug kit" consisting of hypodermic needles, syringes, a vial of clear liquid, several spoons, cigarette lighters, napkins, and food stamp coupons. Ptl. Martie then placed Bing under arrest for possession of drug paraphernalia.
Subsequently, Bing was indicted on five separate counts: (1) aggravated possession of drugs, in violation of R.C. 2925.11(A) and (C)(1)(a); (2) possession of drugs, in violation of R.C.2925.11(A) and (C)(2)(a); (3) possession of drug paraphernalia, in violation of R.C. 2925.14(C); (4) illegal use of food stamps, in violation of R.C. 2913.46(B); and (5) endangering children, in violation of R.C. 2919.22(A). Bing moved to suppress the evidence seized during the search of her purse. A hearing was held in the Medina County Court of Common Pleas on December 21, 1998. The trial court granted Bing's motion to suppress on December 30, 1998. This appeal followed.
The State asserts one assignment of error:
 THE TRIAL COURT ERRED WHEN IT SUPPRESSED THE DRUGS, DRUG PARAPHERNALIA AND FOOD STAMPS SEIZED BY OFFICERS AS A RESULT OF THEIR SEARCH OF THE DEFENDANT-APPELLEE'S PURSE[.]
The State asserts three arguments concerning the trial court's error. We will address each in turn, consolidating the final two.
The State first asserts that the search of Bing's purse was a lawful search incident to arrest. During the suppression hearing, the State argued that the search of Bing's purse was based on probable cause alone. This rationale does not justify a warrantless search. Warrantless searches are per se unreasonable.State v. Myers (1997), 119 Ohio App.3d 376, 379-80, citing Katz v.United States (1967), 389 U.S. 347, 19 L.Ed.2d 576. An exception to this rule exists for searches incident to a lawful arrest.Myers, 119 Ohio App.3d at 380, citing Chimel v. California
(1969), 395 U.S. 752, 23 L.Ed.2d 685. Where the police officer has probable cause to arrest independent of the items obtained in the search, but does not arrest until shortly after the search, the search is not offensive to the Fourth Amendment to the United States Constitution. Rawlings v. Kentucky (1980), 448 U.S. 98,111, 65 L.Ed.2d 633, 645-46. Where there is no probable cause to arrest, the arrest is invalid, rendering inadmissible any evidence seized during the search. See State v. Ostrowski (1972), 30 Ohio St.2d 34,40.
The question of whether an officer has reasonable suspicion or probable cause to make a warrantless arrest is to be reviewed by an appellate court de novo. Ornelas v. United States (1996),517 U.S. 690, 699, 134 L.Ed.2d 911, 920. However, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Id. Reasonable suspicion and probable cause are nontechnical, commonsense conceptions dealing with "`the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates
(1983), 462 U.S. 213, 231, 76 L.Ed.2d 527, 544, quoting Brinegarv. United States (1949), 338 U.S. 160, 175, 93 L.Ed. 1879, 1890.
After thoroughly reviewing the record, we concur with the trial court in concluding that the officers did not have probable cause to arrest. "Probable cause exists where `the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." (Alterations in original.) Brinegar, 338 U.S. at 175-76, 93 L.Ed. at 1890, quoting Carroll v. United States (1924), 267 U.S. 132, 162,69 L.Ed. 543, 555. Ptl. Martie's suspicion was based upon the clerk's report and Bing's: (1) demeanor; (2) apparent dryness of mouth; (3) slurred speech; (4) statement to the officers concerning what they might find in her purse; (5) lack of any burn marks on her arm or hand; (6) past drug activities as known by Ptl. Martie; and (7) apparent needle mark. While these facts may have been sufficient to satisfy the lower standard of reasonable suspicion, they would not lead to a reasonable belief that a drug offense had been committed by Bing. Accordingly, we conclude that Bing's arrest was not supported by probable cause.
Probable cause was also lacking for an arrest on the basis of child endangerment. The child was in an automobile, covered by a blanket and protected from the weather. Although the child was in twenty-degree temperatures allegedly for forty-five minutes, we cannot conclude from that alone that a substantial risk to the child's health or safety was reasonably apprehended as is required by R.C. 2919.22(A). Furthermore, the arresting officers stated that Bing was not arrested for child endangerment but, rather, for drug use or possession. Moreover, we must give due weight to the inferences drawn by the trial judge who, in an articulate opinion, found probable cause lacking. Because the officers lacked authority to arrest Bing, the State's argument that the purse was searched incident to a lawful arrest is without merit.[1]
The State's remaining arguments are that the search was justified by exigent circumstances — the need to prevent the destruction of evidence — and that the inevitable discovery exception applies to this case. The State "did not raise [these] argument[s] at [the] suppression hearing and may not assert [them] for the first time on appeal." State v. Kulczak (Dec. 27, 1995), Summit App. No. 17258, unreported at 4, citing State v. Awan
(1986), 22 Ohio St.3d 120, 122; see, also, State v. Peagler
(1996), 76 Ohio St.3d 496, 499. Neither of the State's final two arguments was raised at the suppression hearing before the trial court. The State is precluded from raising these issues before this court as they were waived.
Therefore, the trial court was not in error in suppressing the evidence in question here. The police officers lacked probable cause to arrest and, hence, had no authority to conduct the search of Bing's purse. The State's assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Medina, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
FOR THE COURT
BAIRD, P. J.
WHITMORE, J.
CONCUR
[1] The officers may have had authority to detain the purse for a brief period based on reasonable suspicion, but that issue is not before this Court. See Smith v. Ohio (1990), 494 U.S. 541,542, 108 L.Ed.2d 464, 467.