DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, the City of Akron, appeals the decision of the Akron Municipal Court, which granted in part motions to suppress for appellees, Nehemiah Holmes, Mary Holmes, and Eboni Smith. This Court reverses and remands.
 I. {¶ 2} The following are the facts as they are alleged in this case. On November 21, 2002, Akron City Police Officers Englehart and Donohue were dispatched to 418 Bacon Street in Akron, Ohio, to respond to a noise complaint. As the officers approached the residence, they heard loud music emanating from the house. The officers knocked on the front door and someone inside the house told them to "go away." The officers continued to knock on the door, identified themselves as Akron police officers and stated they needed to speak to the owner of the house. Joshua Holmes partially opened the front door and stated he was not the owner of the residence. Officer Englehart placed his foot in the doorway to prevent the door from being slammed shut in his face.
 {¶ 3} Joshua told Officer Englehart to remove his foot, the officer did not do so, and the door opened further. As this occurred, Officer Englehart attempted to step into the house and Joshua pushed the door to close it, slamming the door into Officer Englehart. As a result, Officer Englehart's leg and hand became trapped in the doorframe as Joshua continued to apply pressure to the door.
 {¶ 4} Officer Donohue aided Officer Englehart by pushing the door open enough to free his hand, at which time Officer Englehart struck Joshua with his hand in order to stop him from pushing on the door. Officer Englehart freed his leg from the door and the officers entered the house to arrest Joshua for felonious assault. Joshua resisted the officers' efforts to handcuff him and struck Officer Englehart. As the officers were struggling with Joshua, Eboni Smith pushed Officer Donohue's arm away from Joshua as he attempted to handcuff Joshua. Officer Donohue put his arm out and told Eboni to stand back several times, at which time she pushed his hand and began yelling at him. Throughout their struggle to arrest Joshua, the officers observed the occupants of the house acting wildly and making comments to them. The officers specifically observed Nehemiah Holmes holding a plastic lawn chair over his head as if he were about to throw the chair.
 {¶ 5} The officers eventually succeeded at handcuffing Joshua and removing him from the house. Eboni followed the officers as they escorted Joshua out of the house and continued pulling Officer Donohue's clothing and pushing him. Officer Donohue began struggling with Eboni and once additional officers arrived at the scene for backup, Eboni was also arrested. After the officers completed the two arrests, Officer Donohue realized that he was missing his Taser stun gun and flashlight. After searching all around the outside area of the house, Officer Donohue did not find the items and notified his Sergeant and the other officers at the scene of the situation.
 {¶ 6} The police concluded that "exigent circumstances" existed that would allow them to re-enter the house at 418 Bacon Street, due to the missing items. A decision was then made to return to the house and enter without a warrant to search for Officer Donohue's Taser stun gun and flashlight. After knocking at the door for almost 15 minutes without a response, the door was kicked in and the police officers entered the house. Officer Donohue's flashlight was recovered from the second floor of the house, a location he had never been during his first entry into the residence. Officer Donohue's Taser stun gun was discovered near a first floor window and stairs outside of the house, an area Officer Donohue had previously searched and had not found the gun. During this second entry into the house, the police arrested Nehemiah Holmes and Mary Holmes.
 {¶ 7} Nehemiah Holmes was charged with obstructing official business. Mary Holmes was charged with violations of the Akron City Code which pertained to sound amplifying device and obstructing official business. Eboni Smith was charged with obstructing official business and resisting arrest. The three appellees' cases were consolidated and they each entered pleas of not guilty on all their charges in the trial court. In May of 2003, the cases proceeded to a hearing on the appellees' motions to suppress. At the conclusion of the hearing, the trial court granted appellees' motions to suppress in part.
 {¶ 8} The City of Akron ("the City") timely appealed the decision, setting forth one assignment of error for review.
 II. ASSIGNMENT OF ERROR
"The trial court erred by finding the November 11, 2002 search of defendant-appellee Mary Holmes' house unlawful and in violation of the fourth amendment, granting defendant[s]-appellee[s'] motion[s] to suppress the fruits of the search."
 {¶ 9} In its sole assignment of error, the City argues the trial court erred by finding the first entry into Mary Holmes' house on November 11, 2002, was unlawful and in violation of the Fourth Amendment, and subsequently granting the appellees' motions to suppress in part.
 {¶ 10} An appellate court's standard of review with respect to a motion to suppress is de novo. State v. Nichols, 9th Dist. No. 01CA0037, 2002-Ohio-1993, at ¶ 4. However, the reviewing court need only determine whether the trial court's findings are supported by some competent, credible evidence. State v. Winand
(1996), 116 Ohio App.3d 286, 288, citing Tallmadge v. McCoy
(1994), 96 Ohio App.3d 604, 608. "In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer
(1996), 112 Ohio App.3d 521, 548, citing State v. Venham
(1994), 96 Ohio App.3d 649, 653.
 {¶ 11} The appellate court's review of the facts looks only for clear error, giving due weight to the trial court as to the inferences drawn from those facts. State v. Bing (1999),134 Ohio App.3d 444, 448, citing Ornelas v. U.S. (1996),517 U.S. 690, 699, 134 L.Ed.2d 911. However, once accepting those facts as true, the appellate court must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard. State v. Guysinger (1993), 86 Ohio App.3d 592, 594.
 {¶ 12} In the instant case, the trial court concluded the police officers' first entry into Mary Holmes' house was unlawful. Consequently, the court ordered:
"testimony and/or evidence obtained [inside the house] during this initial entry that related to the obstructing official business charge against Nehemiah Holmes, the loud music and obstructing official business charges against Mary Holmes and the obstructing official business charge against Eboni Smith is hereby suppressed."
The City asserts the trial court's decision was improper because the exclusionary rule is not applicable to exclude evidence of the appellees' independent criminal conduct occurring during or after the officers' arrest of Joshua Holmes.
 {¶ 13} As a preliminary matter, this Court clarifies that the parties' appeal is not determined by whether or not the police officers' first entry was lawful or whether they conducted a lawful arrest of Joshua. Rather, the issue in this case is whether the officers' observations of appellees' statements and conduct made during a presumed unlawful arrest should be suppressed if those statements and conduct are offenses in and of themselves. See State v. Ali, 154 Ohio App.3d 493,2003-Ohio-5150.
"The Fourth Amendment prohibits unreasonable searches and seizures. Evidence obtained as a result of an unreasonable search and seizure, which would include an arrest without probable cause, is suppressed as representing the fruit of the poisonous tree. Generally, incriminating statements obtained during an unlawful arrest are to be suppressed. State v. Maurer (1984),15 Ohio St.3d 239, 255, 15 Ohio B. 379, 473 N.E.2d 768. However,an observation of a fresh crime committed during or after thearrest is not to be suppressed even if the arrest is unlawful." (Emphasis added.) Ali at ¶ 13.
 {¶ 14} This Court has also held that where a person who is being arrested commits a new crime during or after the arrest, the conduct witnessed which constitutes that new crime need not be suppressed merely because the initial arrest, which may be the motive for the new crime, turns out to be unlawful. Akron v.Recklaw (Jan. 30, 1991), 9th Dist. No. 14671. The Fourth Amendment's exclusionary rule, which appellees briefly refer to in their argument, "does not sanction violence as an acceptable response to improper police conduct. The exclusionary rule only pertains to evidence obtained as a result of an unlawful search and seizure. Weeks v. United States (1914), 232 U.S. 383; Mappv. Ohio (1961), 367 U.S. 643; Wong Sun v. United States
(1963), 371 U.S. 471." Id. It is clear that further criminal acts, such as obstructing official business and resisting arrest, are not legitimatized by Fourth Amendment transgressions. SeeUnited States v. Bailey (C.A. 11, 1982), 691 F.2d 1009,1016-1018, certiorari denied (1983), 461 U.S. 933.
 {¶ 15} In light of the caselaw, this Court need not decide whether the police officers actually entered Mary Holmes' house unlawfully when they arrested Joshua because appellees' conduct was not privileged against arrest. Recklaw; see, also, Ali.
The record shows that appellees are alleged to have engaged in independent criminal conduct during the officers' arrest of Joshua Holmes. Therefore, the officers' testimony about their encounter with the appellees should not have been suppressed as evidence obtained as a result of an unlawful search and seizure.
 {¶ 16} As the appropriate legal standard necessary to suppress the evidence was not met, this Court finds the trial court erred in granting the suppression of the officers' testimony against appellees. The City's sole assignment of error is sustained.
 III. {¶ 17} Accordingly, the judgment of the Akron Municipal Court is reversed and the cause remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
Slaby, P.J. and Batchelder, J., concur.