[Cite as *State v. Dennison*, 2016-Ohio-4607.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 16CA1 |
| Plaintiff-Appellant, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| ROGER DENNISON, | : | |
| Defendant-Appellee. | : | **RELEASED: 6/23/2016** |

APPEARANCES:

Justin Lovett, Jackson County Prosecuting Attorney, and Pat Story, Jackson County Assistant Prosecuting Attorney, Jackson, Ohio, for appellant.

C. Michael Moore, Jackson, Ohio, for appellee.

Harsha, J.

{¶1} The State of Ohio appeals the trial court's judgment that granted Roger Dennison's motion to suppress evidence on the grounds that the investigating officer did not articulate facts that would create a reasonable basis for the officer to expand the initial scope of the search. The state does not contest the trial court's factual findings, but instead argues that Dennison abandoned the property in question and no longer retained a reasonable expectation of privacy in it at the time of the search. Dennison argues that the state never raised an "abandonment" argument in the trial court and is raising it for the first time in this appeal.

{¶2} We agree with Dennison. The state has forfeited the argument that Dennison abandoned the property. The state did not raise that issue during the trial court proceedings and may not raise the issue for the first time on appeal. We overrule the state's sole assignment of error and affirm the trial court's judgment.

## I. FACTS

**{¶3}** At the suppression hearing the investigating police officer, Brett Hinsch, testified about the traffic stop. Hinsch stated that he and another officer were patrolling the streets when they encountered a vehicle parked partly in the roadway.  When they stopped to investigate, the driver provided a paper photocopy of a Florida driver's license and told the officers he was waiting on his cousin who was in the house across the street. The officers asked the driver several times for the cousin's name, but the driver was not able to answer. The officers noted that the driver was Hispanic and concluded that there may be a language barrier or it was also possible that the driver was being deceitful about something and they should investigate further.

**{¶4}** Hinsch decided to verify whether someone in the house actually knew the driver.  He walked over to the house while the other officer remained with the driver.  A woman answered the door and in response to Hinsch's question, told the officer she did not know the driver. She invited Hinsch into her living room and introduced him to her husband who was sitting there. Hinsch asked them about the driver and both of them look confused.

**{¶5}** At that point Dennison walked into the living room from the kitchen and told Hinsch that he knows the driver.  Hinsch asks Dennison, "Who are you?" and Dennison replies, "I'm his buddy." Hinsch asks Dennison for identification. Dennison gave Hinsch his name, social security number, and date of birth, which Hinsch processed with the police dispatch. After giving Hinsch his identification, Dennison returned to the kitchen. Hinsch described Dennison's gait back to the kitchen as

"moseyed pretty quickly," which he elaborated as meaning "he walked a straight line . . he didn't run but he didn't walk."

{¶6} Hinsch testified that he decided to follow Dennison into the kitchen to keep him within sight because experience has taught him that when you process someone's information in the system and they want to get farther away from you, they are usually hiding something. Hinsch testified that Dennison's return to the kitchen was suspicious enough that he wanted to stay within a short distance of him.

{¶7} On his way back into the kitchen, Dennison removed his keys from his pocket and tossed them onto the kitchen counter, then placed his hand on them and repositioned them. Hinsch testified that he asked Dennison what he was doing and Dennison replied, "Nothing." Hinsch asked "What did you just throw over there?" and Dennison responded, "Oh, just my keys." Hinsch looked at the keys and noticed a small stainless steel pill container attached to the keys. He asked Dennison what was in the pill container and Dennison told him "that's just my Gabapentin," which Hinsch knew to be a non-scheduled prescription drug.

{¶8} Hinsch testified that his check on Dennison's identification came back "clean." However, when Dennison told him that the pill container had Gabapentin, Hinsch seized it.

{¶9} Hinsch testified that later in his shift he opened the pill container to count the pills, found that they were not Gabapentin, and sent them to BCI for analysis.

{¶10} After taking evidence the court heard arguments from counsel. Dennison argued in his motion and at the hearing that Hinsch had no articulable and reasonable suspicion to detain him and that Hinsch unlawfully extended the detention beyond the

scope of its purpose. Dennison argued that the officer's continued detention of him was not related to the original purpose of the stop, which was to determine if anyone in the house knew the driver parked outside; and that his continued detention was not based on any articulable facts giving rise to a reasonable suspicion of some illegal activity. Therefore, the officer had no basis to seize and open the pill container that was attached to Dennison's keys.

{¶11} The state had not filed a written response to Dennison's motion and although the trial court invited post-hearing briefs, the state did not file one. At the conclusion of the suppression hearing the state raised two arguments. First, it argued that Dennison lacked standing to defend the privacy interests of the homeowners. Second, the state argued very briefly that the officer had articulated a reasonable suspicion to conduct the search: The prosecuting attorney stated that there was "clearly reasonable law enforcement each step of the way" and that "we expect law enforcement to investigate suspicious vehicles sitting across the street from houses and when they knock on the door and things escalate, I mean, from there we want them to respond reasonably" and that the officer has "given a perfectly legitimate reasonable expectation [sic] of why he took each step that he took and I don't see any Constitutional infirmity in any of that so."

{¶12} The trial court granted Dennison's motion to suppress. It determined that Hinsch's encounter with Dennison began as consensual and when Dennison returned quickly to the kitchen, Hinsch had a reasonable belief that Dennison was about to engage in criminal activity and was entitled to follow Dennison into the kitchen. However, the court concluded the officer failed to articulate facts that would create a

reasonable basis for expanding the scope of the search and to seize Dennison's pill container after Dennison told him he had a prescription for the medication. The court based this conclusion upon its belief that it is not unlawful to have prescription medication in a container other than the prescription bottle.

{¶13} The state appealed as a matter of right. See R.C. 2945.67 and App. R. 11.2(D).

## II. ASSIGNMENT OF ERROR

{¶14} The state raises one assignment of error:

1.  THE TRIAL COURT ERRED BY GRANTING APPELLANT-DEFENDANT ROGER DENNISON'S MOTION TO SUPPRESS EVIDENCE. *DECISION AND ORDER* (JANUARY 26, 2016).

## III. LAW AND ANALYSIS

{¶15} The state argues that the trial court erred in granting Dennison's motion to suppress because when he tossed his keys with the attached pill container on the kitchen counter, he abandoned them and had no reasonable expectation of privacy at the time of the search, i.e. tossing keys on the kitchen counter is the equivalent of throwing drugs in a shrub during a foot chase.

{¶16} "Question of whether property has been abandoned along with any constitutional interest in the right to privacy or security of a property interest is a factual one; trial court must weigh the facts and circumstances to determine if in fact the property and constitutional interest therein has been, in fact, abandoned." *State v. Harkins*, 5th Dist. Licking No. 02-CA-00019, 2002-Ohio-3940, ¶ 24. Our review of the record shows that the state did not raise this issue at the trial court level and the court made no factual findings concerning it. Because the state did not raise the abandonment argument during the trial court proceedings, it may not raise it for the first

time on appeal. *State v. Kerns*, 4th Dist. Washington No. 99CA30, 2000 WL 310357, *2 (Mar. 21, 2000) (state failed to argue that the stop was consensual during the suppression hearing and therefore cannot raise it for the first time on appeal); *State v. Bing*, 134 Ohio App.3d 444, 731 N.E.2d 266 (9th Dist. 1999) ("The State 'did not raise [these] arguments at [the] suppression hearing and may not assert [them] for the first time on appeal.' "); *See generally State v. Quarterman,* 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15 (2014) (It is a well-established rule that " 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' ")*; State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986) (failure to raise an issue at the trial court level, which issue is apparent at the time of the proceeding, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal).

{¶17} We overrule the state's sole assignment of error because it failed to preserve the argument at trial that it now attempts to make on appeal.

IV. CONCLUSION

{¶18} Having overruled the state's assignment of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
        William H. Harsha, Judge


## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**